EDWARD B. LUDWIG : NO. 8626

versus  COURT OF APPEAL

CHARLES MAURO : PARISH OF ORLEANS

WILLIAM A. BELL, JUDGE:

May 22, 1922.

Court of Appeal
Eastern ...
FILED MAY 22/22
B. J. Stanbury

BY: WILLIAM A. BELL, JUDGE:

This case is on appeal from a judgment of the First City Court of New Orleans, awarding plaintiff damages in the sum of Two Hundred and Fifty-Four Dollars and Five Cents, ($254.05), the full amount prayed for in plaintiff's petition, the judgment of the Trial Court also having rejected defendant's claim in reconvention.

It is charged in plaintiff's petition that on the morning of December 4th, 1921, petitioner's Dodge Touring Car, while in a stationary position, was run into and damaged, at the corner of St. Charles Avenue and First Street, by defendant's automobile, which was driven by defendant himself. It is charged further that the accident was due entirely to the carelessness and negligence of Charles Mauro, in that, beyond plaintiff's control, his, plaintiff's, car, had come to a full stop on the neutral ground, at the intersection of St. Charles Avenue and First Street, because of the stalling of plaintiff's engine. Plaintiff's car being a new one, not having gone over 500 miles, and the night being cold and damp, the engine came to a stop, and while in that position that defendant's car, going down the River-side of the Avenue, close to the neutral ground on that side, and going at an unlawful rate of speed, collided with plaintiff's car, and caused damages to the car in the sum of Two Hundred and Fourteen Dollars and Five Cents ($214.05), and loss of the use of car to the plaintiff, which he valued, for eight days, at $5.00 per day, or $40.00, making the sum total claim of Two Hundred and Fifty-Four Dollars and Five Cents, ($254.05).

Defendant charges negligence on the part of plaintiff, and alleges that plaintiff's car dashed suddenly across the car tracks at the place above mentioned, and ran directly in front of defendant's car in such a way as to make it impossible for the defendant to avoid the collision, and that he, defendant, was running at a moderate rate or speed, and observing all traffic regulations. Defendant claims in reconvention, damages sustained

364

to his car in the total sum of One Hundred and Eighty-Eight Dollars, ($188.00).

From the written testimony taken in the Lower Court, we find the following facts:

Plaintiff and two friends were in plaintiff's Dodge car, going up St. Charles Avenue, on the River side, at about three-thirty o'clock on the morning of December 4th, 1921. When near the wood corner of St. Charles Avenue and First Street, plaintiff stopped his car to let out his two friends, and then proceeded towards the River, across First Street, and while in the middle of the neutral ground the engine of his car suddenly went "dead," leaving the rear wheels of the car on the River-most-down-going rail of the street car track, on the neutral ground. This position, the evidence shows, caused plaintiff's car to project a short distance beyond the neutral ground into the drive-way of the down-going side of St. Charles Avenue. While in this position, and unable to start his car, plaintiff testifies that he looked up the street and saw the defendant's car coming down, at a distance of about two blocks, and that same was going at a speed over thirty miles an hour, that he, plaintiff, immediately blew his horn, and that he also shouted to defendant when he saw that he had not heeded the horn signal, and was within a dangerous and short distance from him. The position of plaintiff's car, the signals given by him to defendant, as well as the cause of the stopping of plaintiff's car on the neutral ground, are all verified by both witnesses who were in plaintiff's car before he turned same into the intersection of St. Charles Avenue and First Street. These two witnesses were standing, at the time of the accident, on the lower, River corner of St. Charles Avenue and First Street, to which place they had walked, after leaving plaintiff's car, at the point above stated.

It appears that after the accident, plaintiff's car was still with its rear wheels at, or upon the far River side of the neutral ground, and had, from the impact of the

on-coming car, been turned in an angular direction, somewhat down St. Charles Avenue.

The damage to plaintiff's car was on the right front wheel, the right wheel guard, or fender, and the forward part of the right running-board, thus showing that this car was hit squarely on the right side from the front to all of the right forward side extending from the engine to about one foot of the running-board.

On the other hand, defendant's car seems to have been damaged to the extent of having its front bumper driven well into the radiator, making a hole therein on the left of the center of the radiator, defendant's car, known as a Pilot Car, being the heavier of the two cars, and weighing about three tons.

There were five witnesses to the accident - three for plaintiff, that is, himself and his two friends, and two for defendant, that is, defendant and a man who was driving with him at the time of the accident. There is some testimony also about another man having witnessed the accident, but he was not produced by defendant, though it is admitted by plaintiff's counsel that had such witness been present, he would have testified as did the other occupant of defendant's car, who has testified as a witness herein.

All of plaintiff's witnesses are consistent in their testimony that from the moment plaintiff's car went "dead" on the track, there was no movement of his car at all until it was struck by defendant's car, while on the other hand, the defense made by defendant is that although plaintiff's car had stopped, or gone "dead" on the neutral ground, that before defendant reached the point of the accident, plaintiff suddenly put his car in gear and plunged into the middle of the street, thus crossing defendant's right of way before he could recover or swerve out of plaintiff's course.

We have given careful attention to defendant's testimony on this fact, as the liability of the one or the other litigant depends principally upon this contention.

Defendant testifies that when about one block up St. Charles Avenue, and while on the wood side coming down, though the weather was somewhat hazy, he saw plaintiff's car standing on the track on the neutral ground, on the inside of the curbing. By the word "curbing" we understand him to mean the curbing enclosing the neutral ground. He further states that when he got about eighty feet from plaintiff's car, it started off, and reached about ten feet outside of the curbing, into, and about the middle of the street. If this statement be true, and if plaintiff's car suddenly lunged into the street, there might be some grounds for the charge of negligence made against the plaintiff, but on cross-examination we find that defendant says he was about eighty feet when he first saw plaintiff who had stopped on the tracks, and that plaintiff started to move a little, and then stopped, and went about two feet out of the curbing. This position of plaintiff's car about two feet out of the curbing, would have put plaintiff's car with its hind wheels resting on the extreme right down-going ridge of the car track, just where the three witnesses for plaintiff testify the car was resting at the time of the accident. If defendant saw plaintiff's car at any time on the neutral ground, whether it was wholly within the curbing, or slightly projecting into the right of way upon which defendant's car was coming, it was defendant's duty to give plaintiff every opportunity to safely make the crossing , especially as defendant admits that he heard plaintiff's horn, saw his car and his lights about a block away, and then continues to testify as follows:

" Q. Was there any space between the front
of Mr. Ludwig's car and the sidewalk where
you could have passed?

A. Yes, sir.

Q. Did you make any effort to go to one side?

A. I was mostly on the lake side.

Q. You were closer to the neutral ground than
the sidewalk?

A. My right wheel was in the center of the
street.

Q. You just testified that there was plenty
of room between Mr. Ludwig's car and the
sidewalk, did you make any attempt to go
on the side?

A. Yes, sir.

Q. Did you try to go by there?

A. I mean between the neutral ground and the
car line.

Q. How much room was there between the front
of Mr. Ludwig's car and the sidewalk?

A. About fifteen feet fully.

Q. How wide is your machine?

A. Five feet four inches or 5 inches.

Q. Did you make any attempt to go in this
fifteen feet between his car and the
sidewalk?

A. I tried a little but I could not do it,
that is where I hit the front of his car.

Q. You observed his car for eighty feet con-
tinuously?

A. For a block, but he was on the neutral ground.

Q. During all that time there was at least
fifteen feet of street that you could
pass, did you make any effort to go
through that?

A. I could not because he was going towards
the river, there is an incline there.

x x x x x x x x x x x x

Q. You hit this car, this car did not hit you?

A. Yes, sir."

368

The other occupant of defendant's car testifies that he saw plaintiff's car stop with bright lights, about the middle of the neutral ground, when he and defendant were one block away from where the accident happened, and that plaintiff's car made another start when defendant was coming near the neutral ground, about thirty or forty feet from First Street. This, of course, is corroborative of defendant's testimony about plaintiff's having made a second start while on the neutral ground, but this testimony cannot be relied on, for we find that this witness states that it looked as though plaintiff were trying to start his car, and that it was probably in gear, and that all of a sudden, plaintiff's car ran into defendant's car near the side-walk. This witness further testifies that when he firs saw plaintiff's car, it was stopped about the center of the neutral ground on the tracks, and that afterwards it moved very slowly, as if someone moved it, for five feet, and that the front wheels got over the tracks, on the street, and that it appeared as if a part of plaintiff's car was on the last track on the down course of the neutral ground. This witness contradicts the defendant, in that he says that both cars were moving at the time of the accident, while as a fact, it appears from defendant's own testimony that the car was at a full stop on the neutral ground, then started to move a little, and finally stopped, with about two feet of the car extending out into the street. This testimony cannot be reconciled. Witness' testimony to the effect that defendant's car was run into by plaintiff's car is impossible of belief, when the nature of the damage to the two cars is considered. Had the accident occurred as this witness for the defense testifies it did, then the defendant's car would have been damaged on the left side, and plaintiff's car would have had its front radiator and bumper in the condition that defendant's car is shown to have had. It is conclusive from the evidence, that plaintiff's car, and not defendant's car was run into, in fact, on cross-examination, counsel for plaintiff forces this witness to admit as follows:

369

" Q. Mr. Mauro ran into his car?

A. Yes sir, as he came around he headed towards the sidewalk and Mr. Mauro's car hit him.

Q. What was the position of Mr. Ludwig's car after the accident?

A. On St. Charles Avenue.

Q. Whereabouts?

A. On St. Charles Avenue and First Street.

Q. Where about?

A. It was headed towards down town.

Q. Where were the front wheels, in the thoroughfare?

A. It happened in the center of the street.

Q. Where was the back of his car?

A. Facing Third Street, it was not directly up and down St. Charles Avenue.

Q. Where were his back wheels, in the street?

A. One was against the curbing.

Q. Which curbing?

A. The curbing of the neutral ground.

Q. How far away were you when you first saw this car?

A. About one block away.

Q. How far away was Mr. Mauro's machine at the time that Mr. Ludwig, as you say, started his machine a second time?

A. When I first saw the car stop it was in the middle of the neutral ground, then I saw it move less than five feet, then it stopped again, by then we were within thirty to thirty-five feet from it, and then I saw again lights making different moves as if to start again, that was when the car was about the middle of the street.

Q. How far away were you then?

A. Thirty or thirty-five feet.

Q. How fast was Mr. Ludwig going?

A. He had stopped again.

Q. Was he at any time going any faster than three miles?

A. No sir. "

Questions asked by the Court of this same witness and his answers thereto show that his testimony is not reliable.  The Court asked him the following:

" Q. The Dodge car was struck?

A. Both struck.

Q. Which car was hit from the side?

A. None was hit from the side.

Q. The Dodge car was not hit from the side?

A. Only by a glance blow.

Q. Where was his damage?

A. Right front.

Q. Was his running board hit?

A. No sir, it may have been, I do not know."

From the preponderance of the testimony, which appears to be in favor of plaintiff, we find particularly, that plaintiff was not in any manner at fault, and that the sudden and dangerous position in which he was placed by the accidental choking of his e gine, created a situation of which the defendant in his on-coming car was fully advised from a distance of more than a block, and that after signal given by plaintiff's horn, which defendant admits to have heard, the last chance of avoiding the accident was clearly with the defendant.  The width of the Avenue at the point of the accident, and the position of the fourteen foot Dodge car after the accident, show that defendant had ample opportunity, by careful driving, and by careful observance of the signal given to him, to have swerved, and safely cleared plaintiff's car, which we are convinced, from the evidence in +his record, was not  in motion after it first came to a dead stop on the neutral ground.

We are of the opinion that the evidence is clearly with the plaintiff, and that the finding of the Lower Court to this effect should not be disturbed.

JUDGMENT AFFIRMED AT DEFENDANT'S COST